IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICARDO GUERRA, ERIC OCHOA and : | |
| GUS RICHARD DAVIS, individually and : | |
| on behalf of all others similarly situated, : | CIVIL ACTION |
|     Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| GMAC LLC, GMAC MORTAGE, LLC, : | NO. 2:08-cv-01297-LDD |
| GMAC BANK, HOMECOMINGS : | |
| FINANCIAL, LLC AND DOES 1-10, : | |
| inclusive, : | |
|     Defendants. : | |

MEMORANDUM AND ORDER

AND NOW, this 20th day of February 2009, upon consideration of Defendants' Motion to Dismiss the First Amended Complaint (Doc. No. 31), Plaintiffs' Opposition thereto (Doc. No. 35), Defendants' Reply Brief in Support of the Motion to Dismiss (Doc. No. 40), Plaintiffs' Additional Authority in Surreply thereto (Doc. No. 50), Defendants' Notice of Supplemental Authority (Doc. Nos. 52, 53), and Defendants' Second Notice of Supplemental Authority (Doc. No. 56), it is hereby ORDERED that Defendants' Motion to Dismiss is DENIED.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Ricardo Guerra, Eric Ochoa, and Gus Richard Davis commenced this proposed class action on behalf of themselves and all others similarly situated[1] on March 17, 2008, (Doc.

---

[1] The proposed class includes "[a]ll minority persons in the United States who obtained a residential mortgage loan from [Defendants] between January 1, 2001 and the present and were harmed by Defendants' racially discriminatory policies and/or practices. (Am. Compl.

1

No. 1), and they filed a First Amended Complaint on July 22, 2008, (Doc. No. 23).  In the First Amended Complaint, they allege violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., against Defendants GMAC LLC, GMAC Mortgage, LLC, GMAC Bank, Homecomings Financial, LLC, and Does 1-10.  (Am. Compl. ¶ 1.)

The crux of this action can be summarized as follows: Defendants originate and fund mortgage loans, (id. ¶¶ 58, 118), and have collectively established policies for access to their loan products that subject minority financing applicants to a significantly higher likelihood of exposure to high cost loans than similarly situated non-minority applicants, (id. ¶ 63).  More specifically, according to Plaintiffs, Defendants have established a credit pricing system, which includes an objective component as well as a subjective component.  (Id. ¶¶ 5, 132.)  In evaluating loan applicants' credit information, Defendants initially perform an objective analysis of risk-related variables including debt-to-income ratios, loan-to-value ratios, credit bureau histories, bankruptcies, automobile repossessions, prior foreclosures, payment histories, and credit scores.  (Id. ¶¶ 5, 132.)  Defendants derive a risk-based financing rate from these objective factors.  (Id. ¶ 133.)  The subjective component of Defendants' credit pricing system, referred to as the Discretionary Pricing Policy, then authorizes the subjective surcharge of additional points, fees and other credit costs to the risk-based financing rate.  (Id. ¶¶ 5, 134.)  According to Plaintiffs, the Discretionary Pricing Policy by design causes borrowers with identical or similar credit scores to pay differing amounts to obtain credit.  (Id. ¶ 137.)  In particular, the

---

¶ 69.)  By "minority," Plaintiffs refer to "any and all non-Caucasian/White racial groups protected under the [ECOA] and the [FHA], including, without limitation, African-Americans and Latinos."  (Id. ¶ 4.)

Discretionary Pricing Policy has a discriminatory impact on minority borrowers. The Discretionary Pricing Policy causes minorities to pay more discretionary finance charges and higher interest rates than similarly situated non-minorities. (Id. ¶ 138.) These additional finance charges and higher interest rates drive up the average cost of mortgage loans made by Defendants to minority borrowers. (Id. ¶ 63.) Further, minority borrowers are substantially more likely than similarly situated non-minorities to be placed into high cost loans. (Id. ¶ 138.) Thus, Plaintiffs claim that Defendants violated the FHA and the ECOA by placing minority borrowers into higher-priced loans because of their race. (Id. ¶ 142.)

Plaintiffs allege that they have each been harmed by Defendants' Discretionary Pricing Policy. Plaintiff Ricardo Guerra is a minority homeowner who obtained a mortgage loan from Defendants on September 22, 2006. (Id. ¶ 14.) Plaintiff Eric Ochoa is a minority who obtained a refinance mortgage loan from Defendants on June 27, 2006. (Id. ¶ 24.) Plaintiff Gus Richard Davis is a minority homeowner who obtained a refinance mortgage loan from Defendants on August 3, 2007.[2] (Id. ¶¶ 31-32.) Due to Defendants' discretionary pricing policy, Plaintiffs were all charged higher interest rates and more finance charges than similarly situated non-minorities. (Id. ¶¶ 20, 29, 43.)

II.    LEGAL STANDARD

When evaluating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations set forth in the complaint. See Fed. R.

---

[2] Plaintiffs Guerra and Ochoa were placed into adjustable rate mortgages, (id. ¶¶ 16, 25, 35), with prepayment penalty periods ending only days before their mortgage rates adjusted, (id. ¶¶ 17, 26). Plaintiff Davis was placed into an adjustable rate mortgage with a negative amortization feature. (Id. ¶¶ 35-38.)

3

Civ. P. 12(b)(6); Malia v. Gen. Elec. Co., 23 F.3d 828, 830 (3d Cir. 1994).  To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007), and a court "need not credit a complaint's 'bald assertions' or 'legal conclusions,'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks omitted).  "The inquiry is not whether plaintiffs will ultimately prevail on the merits, but whether they should be afforded an opportunity to offer evidence in support fo their claims."  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002).  Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965).  Therefore, a claim may be dismissed when the facts alleged and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought.  See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).

III.    DISCUSSION

Defendants move to dismiss Plaintiffs' First Amended Complaint.  They argue that the FHA and the ECOA do not authorize disparate impact claims.  In addition, even if disparate impact claims are authorized by the FHA and the ECOA, Defendants argue that Plaintiffs have failed to plead the elements of disparate impact liability.  Defendants also argue that the claims of certain Plaintiffs are barred by the statute of limitations, and that the First Amended Complaint is in general pled with insufficient specificity.  We find Defendants' arguments unconvincing.

A.    Disparate Impact Claims Under the FHA and the ECOA

Defendants begin their Motion to Dismiss by arguing that the FHA and the ECOA do not

permit liability under a disparate impact theory.  (Defs.' Br. Supp. Mot. Dismiss 2 (citing Smith v. City of Jackson, 544 U.S. 228 (2005).)  Defendants acknowledge that courts within the Third Circuit have permitted disparate impact claims pursuant to the FHA and the ECOA.[3]  (Defs.' Br. Supp. Mot. Dismiss 5 n.3.)  Defendants, however, contend that this prior precedent is no longer good law in light of the Supreme Court's decision in Smith v. City of Jackson.  (Defs.' Br. Supp. Mot. Dismiss 2 (citing Smith, 544 U.S. 228).)  No court has applied Smith to find that disparate impact claims are not cognizable under the FHA or the ECOA.  To the contrary, numerous courts have squarely rejected the argument set forth by Defendants here.  Hoffman v. Option One Mortgage Corp., 589 F. Supp. 2d 1009, 1010-11 (N.D. Ill. 2008) (concluding that Smith does not preclude disparate impact claims under the FHA and the ECOA); Taylor v. Accredited Home

---

[3]     The Third Circuit Court of Appeals has recognized disparate impact liability under the FHA.  Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains, 384 F.3d 442 (3d Cir. 2002); Doe v. City of Butler, 892 F.2d 315, 323 (3d Cir. 1989).  We therefore note that we remain bound by controlling Third Circuit precedent in the absence of a square holding overruling that precedent.  See United States v. Extreme Assocs., Inc., 431 F.3d 150, 155 (3d Cir. 2005) (lower court should follow directly applicable precedent when faced with a more recent decision that may weaken prior precedent, thus leaving to a higher court "the prerogative of overruling its own decisions") (citing Agostini v. Felton, 521 U.S. 203, 237 (1997), and Rodriguez de Ouijas v. Sherason/Am. Express, Inc., 490 U.S. 477, 484 (1989)); see also United States v. Walker, 06-2265, 2007 WL 172335, at *3 (E.D. Pa. Jan. 22, 2007) ("[U]ntil the Supreme Court or the Third Circuit expressly overrules [Third Circuit precedent], we are still bound by it.").
       While the Third Circuit has not yet recognized disparate impact liability under the ECOA, district courts within the Third Circuit have.  See, e.g., Chiang v. Schafer, No. 00-0004, 2008 WL 3925260, at *21 (D.V.I. Aug. 20, 2008); Smith v. Chrysler Fin. Co., L.L.C., No. 00-6003, 2003 WL 328719, at *5 (D.N.J. Jan. 15, 2003).  These district court decisions are in line with the decisions of other circuit courts.  See, e.g., Golden v. City of Columbus, 404 F.3d 950, 963 n.11 (6th Cir. 2005) (observing that "it appears" that disparate impact claims are permissible under the ECOA); Miller v. American Express Co., 688 F.2d 1235, 1240 (9th Cir. 1982) (holding that the ECOA permits disparate impact liability); Haynes v. Bank of Wedowee, 634 F.2d 266, 269 (5th Cir. 1981) ("ECOA regulations endorse use of the disparate impact test to establish discrimination.").

Lenders, Inc., 580 F. Supp. 2d 1062, 1067 (C.D. Cal. 2008) (holding that Smith has not overruled prior precedent recognizing the FHA and the ECOA permit disparate impact claims); Nat'l Cmty. Reinvestment Coal. v. Accredited Lenders Holding Co., 573 F. Supp. 2d 70, 79 (D.D.C. 2008) (holding that Smith does not preclude disparate impact claims brought pursuant to the FHA); Payares v. JP Morgan Chase & Co., No. 07-5540, 2008 WL 2485592, at *1 (C.D. Cal. June 17, 2008) (concluding that Smith does not bar disparate impact claims under the FHA and the ECOA); Ramirez v. GreenPoint Mortgage Funding, Inc., No. 08-0369, 2008 WL 2051018, at *4 (N.D. Cal. May 13, 2008) (holding that defendants failed to demonstrate that Smith is "clearly irreconcilable" with Ninth Circuit precedent holding that disparate impact claims are cognizable under the FHA and the ECOA); Zamudio v. HSBC N. Am. Holdings, Inc., No. 07-4315, 2008 WL 517138, at *2 (N.D. Ill. Feb. 20, 2008) (concluding that Smith does not bar disparate impact claims under the FHA and the ECOA); Garcia v. Countrywide Fin. Corp., et al., No 07-1161, Am. Order Granting in Part and Denying in Part Defs.' Mot. Dismiss, at *11 (C.D. Cal. Jan. 17, 2008) (declining to hold that Smith overturned Ninth Circuit precedent recognizing disparate impact claims under the FHA and ECOA) ("Garcia Order"); Beaulialice v. Fed. Home Loan Mortgage Corp., No. 04-2316, 2007 WL 744646, at *4 (M.D. Fla. Mar. 6, 2007) (concluding that Smith does not bar disparate impact claim under the FHA and assuming the same under the ECOA). Like the numerous district courts who have unanimously rejected the argument set forth by Defendants here, we disagree with Defendants' reading of Smith.

In Smith, the Supreme Court ruled that § 4(a)(2) of the Age Discrimination in Employment Act ("ADEA") allows for disparate impact claims. 544 U.S. at 233-40. In so ruling, the Court in part relied on a textual analysis comparing § 4(a)(2) of the ADEA to §

6

703(a)(2) of Title VII. Id. at 235. The court began by noting that disparate impact claims are cognizable under § 703(a)(2) of Title VII. Id. at 235. Because § 703(a)(2) of Title VII and § 4(a)(2) of the ADEA contain language prohibiting actions that "deprive any individual of employment opportunities or *otherwise adversely affect* his status as an employee," both provisions focus on the "effects of the action on the employee rather than the motivation for the action of the employer." Id. (internal citations omitted). In a footnote, the Court contrasted § 4(a)(2) of the ADEA with § 4(a)(1) of the ADEA, which does not encompass disparate impact liability, observing that the text of § 4(a)(1) focuses on the employer's action rather than the effect on the employee. Id. at 236 n.6. Based on this portion of the decision, Defendants argue that a "plaintiff may not prove discrimination under a disparate impact theory unless the anti-discrimination statute at issue has specific language permitting a disparate impact claim." (Defs.' Br. Supp. Mot. Dismiss 2.) According to Defendants, the FHA and the ECOA both lack such language and therefore do not support disparate impact claims.[4] (Defs.' Br. Supp. Mot. Dismiss 2-5.)

However, the Smith decision was not based merely on the text of the ADEA, but also on the governing regulations, the purposes of the act, and the uniform interpretation of the appellate courts. 544 U.S. at 233-40. Thus, we cannot say that the Smith decision so clearly conflicts with prior precedent that it necessarily requires our departure from that precedent. See United States

---

[4] To support their argument, Defendants cite the following excerpt from the D.C. Circuit's decision in Garcia v. Johanns: "The Supreme Court has held that this language gives rise to a cause of action for disparate impact discrimination under Title VII and the ADEA. . . . ECOA contains no such language." (Defs.' Br. Supp. Mot. Dismiss 4 (quoting Garcia v. Johanns, 444 F.3d 625, 633 n.9 (D.C. Cir. 2006).) However, Garcia provides no support to Defendants' argument because the D.C. Circuit there assumed without deciding that a disparate impact claim *is* still cognizable under the ECOA. Garcia, 444 F.3d at 633.

v. Extreme Assocs., Inc., 431 F.3d 150, 155 (3d Cir. 2005) (lower courts should follow directly applicable precedent when faced with a more recent decision that may weaken prior precedent) (citing Agostini v. Felton, 521 U.S. 203, 237 (1997)).  In fact, Defendants set forth an application of the Smith decision that is too broad.  "Although the identical language found in the ADEA and Title VII was a basis for comparison in Smith, the Smith decision does not reach so far as to prohibit disparate[]impact claims under other statutes that do not contain this same language; nor does it set forth a new test for determining whether a statute supports disparate[]impact claims." Zamudio, 2008 WL 517138 at *2; see also Garcia Order at 9 (the Smith decision "did not hold that a statute *must* contain . . . 'effects' language in order to authorize disparate impact claims"). Thus, we decline to hold that the Smith decision, by implication, overruled prior precedent recognizing disparate impact liability under the FHA and the ECOA.

      B.      Pleading Disparate Impact Claims

In order to properly plead a disparate impact claim, a plaintiff must allege (1) a specific outwardly neutral practice or policy, (2) a significantly adverse or disparate impact on persons of a particular type, and (3) facts raising a sufficient inference of causation.  Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains, 384 F.3d 442, 466-67 (3d Cir. 2002) (citing Gamble v. City of Escondido, 104 F.3d 300, 306 (9th Cir. 1997)).  Defendants assert that Plaintiffs' First Amended Complaint fails to allege each of the three required elements, and we will address the sufficiency of Plaintiffs' allegations with regard to each element in turn.

Defendants, again relying on Smith v. City of Jackson, argue that Plaintiffs have failed to adequately identify a specific discriminatory practice or policy.  (Defs.' Br. Supp. Mot. Dismiss 7-9.)  In Smith, the Supreme Court held that "it is not enough to simply allege that there is a

8

disparate impact . . . or point to a generalized policy that leads to such an impact. Rather, the [plaintiff] is responsible for 'isolating the specific . . . practices that are allegedly responsible for any observed statistical disparities.'" 544 U.S. at 241 (quoting Wards Cove Packing Co. v. Antonio, 490 U.S. 642, 656 (1989)). Plaintiffs point to allegations in the First Amended Complaint that set forth Defendants' use of a "'Discretionary Pricing Policy' which authorizes the use of subjective criteria to markup standard interest rates and financing charges on loans irrespective of the credit-worthiness of the borrower." (Pls.' Opp'n Mot. Dismiss 13.) While no decision in the Third Circuit addresses this issue, several recent district court decisions in other circuits have allowed almost identical allegations to proceed past the motion to dismiss stage. See, e.g., Miller v. Countrywide Bank, N.A., 571 F. Supp. 2d 251, 255-58 (D. Mass. 2008) (where plaintiffs asserted disparate impact challenges under the ECOA and the FHA based on defendants' discretionary pricing policy that allowed defendants' retail salesmen, independent brokers, and correspondent lenders to add various charges and fees based on subjective, non-risk factors); Taylor, 580 F. Supp. 2d at 1068 (same); Ramirez, 2008 WL 2051018 at *4-5 (same); see also Smith v. Chrysler Financing Co., No. 00-6003, 2003 WL 328719, at *6-7 (D.N.J. Jan. 15, 2003) (where plaintiffs asserted disparate impact claim under the ECOA based on defendant's policy authorizing car dealerships who provide retail installment contracts to subjectively mark-up finance charge rates on otherwise objective, risk-related annual percentage rates); Jones v. Ford Motor Credit Co., No. 00-8330, 2002 WL 88431, at *4 (S.D.N.Y. Jan. 22, 2002) (same). We find the reasoning of these decisions persuasive.

      Defendants' reliance on Smith v. City of Jackson is inapposite. There, the Supreme Court affirmed summary judgment and held that the plaintiffs could not establish a disparate

impact claim under the ADEA challenging a pay increase plan because the plaintiffs "had done little more than point out that the pay plan at issue is less generous to older workers" and had not "identified any specific test, requirement or practice within the pay plan that has an adverse effect on older workers." Smith, 544 U.S. at 241.  Here, however, Plaintiffs have done more than point to a generalized policy.  They do not challenge the entire process by which Defendants determine borrowers' rates and fees.  Rather, they specifically challenge Defendants' Discretionary Pricing Policy, which is the "component" of Defendants pricing system that "authorizes unchecked, subjective surcharge of additional points, fees and other credit costs to an otherwise objective risk-based financing rate." (Am. Compl. ¶ 5.)  In the context of a motion to dismiss, we find that Plaintiffs have sufficiently isolated the specific practice that they claim is responsible for the statistical disparities at issue.[5]  See Miller, 571 F. Supp. 2d at 257; Ramirez, 2008 WL 2051018 at 5; Garcia Order, No. 07-1161, at 11-15.

Next, Defendants argue that Plaintiffs have failed to allege specific facts showing a disparate impact on a protected class.  (Defs.' Br. Supp. Mot. Dismiss 10.)  According to Defendants, "plaintiffs must allege that similarly-situated [m]inority borrowers paid more for their loans." (Defs.' Br. Supp. Mot. Dismiss 10.)  Plaintiffs have alleged precisely that.  For example, according to Plaintiffs' First Amended Complaint, "Defendants have followed—and

---

[5]   In addition, while Defendants argue that Plaintiffs have merely identified the absence of a policy, (Defs.' Br. Supp. Mot. Dismiss 8 n.8), the Supreme Court has squarely held that "subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." Watson v. Forth Worth Bank, 487 U.S. 977, 991 (1988). Allowing such "practices" or "policies" to "escape scrutiny would enable companies responsible for complying with anti-discrimination laws to 'insulate' themselves by 'refrain[ing] from making standardized criteria absolutely determinative.'" Miller, 571 F. Supp. 2d at at 258 (quoting Watson, 487 U.S. at 997).

continue to follow—their Discretionary Pricing Policy that causes minority borrowers to pay subjective fees such as yield spread premiums and other mortgage related finance charges at higher rates than similarly situated non-minority borrowers." (Am. Compl. ¶ 120; see also id. ¶ 137 ("Defendants' policies and procedures concerning the assessment of yield spread premiums and other discretionary fees cause persons with identical or similar credit scores to pay differing amounts for obtaining credit.  Such subjective loan pricing . . . disparately impacts Defendants' [m]inority borrowers."); id. ¶ 150 ("As a result of Defendants' Discretionary Pricing Policies, Defendants have collected more in finance charges from [m]inorities than from similarly-situated Caucasian persons, for reasons unrelated to credit risk.").)

Plaintiffs cite a study conducted in March of 2007 that "discussed higher cost home purchase lending in six metropolitan areas during 2005 and found significant disparities between loans made to [m]inority and Caucasian borrowers." (Id. ¶ 6.) With respect to Defendants specifically, the study found that in Los Angeles, African-Americans were 2.8 times more likely and Latinos were 1.8 times more likely than Caucasians to be put into high cost loans, and in New York, African-Americans were 17.2 times more likely and Latinos were 13.75 times more likely than Caucasians to receive high cost loans. (Id. ¶ 7.) While Defendants dispute the validity of the statistics relied on by Plaintiffs, (Defs.' Br. Supp. Mot. Dismiss 10-12), the validity of the statistical evidence is a question of fact better suited to summary judgment.

Plaintiffs also set forth a history of discrimination in the housing industry by citing various industry-wide reports and studies concluding that minorities are statistically more likely to be issued higher-rate loans than Caucasian borrowers with the same qualifications. (Am. Compl. ¶ 99 (citing National Community Reinvestment Coalition report on credit

discrimination); id. ¶ 100 (citing Home Mortgage Disclosure Act data for 2006); id. ¶ 101 (citing speech made by Martin J. Gruenberg, Vice Chairmen of the Federal Deposit Insurance Corporation); id. ¶ 102 (citing 2006 report of the Center for Responsible Lending); id. ¶¶ 106-07 (citing 2007 study released by the Association of Community Organizations for Reform Now).) While Defendants attack Plaintiffs' reliance on industry-wide data and studies, requiring Plaintiffs to set forth their claims with more specificity prior to discovery would improperly deny Plaintiffs the opportunity to prove their claim. Overall, we find that Plaintiffs' allegations, taken as true, are sufficient to suggest a disparate impact.

      Finally, Defendants argue that Plaintiffs have failed to allege a causal connection between the challenged policy and the alleged disparate effect. (Defs.' Br. Supp. Mot. Dismiss 12.) Relying on Wards Cove Packing Company v. Atonio, Defendants assert that Plaintiffs must "demonstrate that the disparity they complain of is the result of one or more of the . . . practices that they are attacking here, specifically showing that each challenged practice has a significantly disparate impact . . . ." (Defs. Br. Supp. Mot. Dismiss 12-13 (quoting Wards Cove Packing Co., 490 U.S. 642, 657 (1989).) Here, Plaintiffs do in fact allege that Defendants' Discretionary Pricing Policy "accounts for a significant portion" of the alleged statistical disparities in rates and terms between similarly-situated minority and non-minority borrowers. (Am. Compl. ¶ 12; see also id. ¶ 120 ("Defendants have followed—and continue to follow—their Discretionary Pricing Policy that causes minority borrowers to pay subjective fees such as yield spread premiums and other mortgage related finance charges at higher rates than similarly situated non-minority borrowers. . . . This pattern of discrimination is not the result of random or non-discriminatory factors. Rather, it is a direct result of Defendants' mortgage lending policies and procedures.").)

Although we find that Plaintiffs' First Amended Complaint gives rise to a fair inference of discrimination, ultimately, the question of causation is premature; the question of proof will become an issue at later stages of the proceedings.

    C.    <u>Statute of Limitations</u>

Defendants move to dismiss the claims of the Montes Plaintiffs as time-barred. (Defs.' Br. Supp. Mot. Dismiss 13.) After Defendants filed their Motion to Dismiss, the Montes Plaintiffs voluntarily dismissed their claims without prejudice. (Montes Pls.' Notice Dismissal, Doc. No. 37.) Although the parties have raised arguments regarding the statute of limitations as it relates to as yet unnamed class members, (Pls.' Opp'n Mot. Dismiss 20-35; Defs.' Reply Br. Supp. Mot. Dismiss 7-9; Defs.' Notice Supp. Authority 1-2 & Ex. 1; Defs.' Second Notice Supp. Authority 1-2 & Ex. 1), this is not an appropriate time to consider the impact of a statute of limitations defense on absent class members. See <u>Chiang v. Veneman</u>, 385 F.3d 256, 269 (3d Cir. 2004). We therefore will not address Defendants' argument based on the statute of limitations.

    D.    <u>Sufficiency of the Pleadings</u>

Defendants close their Motion to Dismiss by arguing that Plaintiffs' First Amended Complaint is insufficient for three additional reasons. First, Defendants contend that Plaintiffs' First Amended Complaint fails to meet the pleadings standards set forth by Rule 8 because Plaintiffs "group all four corporate defendants . . . refer[ing] to them collectively as 'GMAC' or 'the defendants.'" (Defs.' Br. Supp. Mot. Dismiss 20-21.) Second, Defendants argue that Plaintiffs fail to state a claim against Defendants GMAC LLC and GMAC Bank because Plaintiffs have not stated any involvement by these Defendants in the loans to Plaintiffs. (Defs.'

Br. Supp. Mot. Dismiss 21-22.) According to Defendants, Defendant GMAC LLC has been included in this suit "based entirely on [its role] as the '[p]arent [c]orporation' of the lender defendants." (Id. at 22.) And Defendant GMAC Bank has been included "based entirely on its corporate relationship with GMAC Mortgage." (Id.) Defendants' first and second arguments can be resolved together. Despite Plaintiffs' failure to distinguish between each of the Defendant GMAC entities in the First Amended Complaint, it is clear that Plaintiffs have alleged participation by each of the Defendants in the challenged discriminatory practices. (Am. Compl. ¶ 63.) The allegations of wrongdoing stem from each Defendants' own conduct. The evidence revealed during discovery may show that some Defendants did not participate in the alleged scheme. At this point, however, Plaintiff has pled facts sufficient to state a claim against each Defendant.

Finally, Defendants argue that Plaintiffs have failed to state a claim against the Doe Defendants because "no facts are alleged . . . to identify how, if at all, they are relevant to this action." (Defs.' Br. Supp. Mot. Dismiss 23.) In the First Amended Complaint, Plaintiffs allege that each of the 10 Doe Defendants, upon information and belief, "was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendant[s], and . . . engag[ed] in the conduct alleged here." (Am. Compl. ¶ 66.) "Plaintiffs may be unaware of the identities and roles of various actors and . . . unable to conduct a pre-trial investigation to fill in the gaps." Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004). "Doe defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.'" Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998) (quoting Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 36 (E.D. Pa. 1990)). "The case law is clear that '[f]ictitious parties

14

must eventually be dismissed if discovery yields no identities.'" Id. (citing Scheetz, 130 F.R.D. at 37.)  Here, Defendants do not argue that Plaintiffs will not be able to discover the identities of the Doe Defendants.  We will permit Plaintiffs an opportunity to conduct discovery.

IV.     CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is DENIED.  An appropriate order follows.

BY THE COURT:

/S/LEGROME D. DAVIS

Legrome D. Davis, J.